# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**JENNIFER BARDRAM,**

     **Plaintiff,**

**v.**                                                    **Case No: 8:22-CV-00873-MSS-AEP**

**OAK HILL HEALTH AND
REHABILITATION, LLC,**

     **Defendant.**

---

## ORDER

    **THIS CAUSE** comes before the Court for consideration of Defendant's Motion for Summary Judgment, (Dkt. 20), Plaintiff's response in opposition thereto, (Dkt. 22), Defendant's reply, (Dkt. 27), and the Parties' Stipulation of Agreed Facts. (Dkt. 38) Upon consideration of the relevant filings, case law, and being otherwise fully advised, the Motion is **GRANTED IN PART and DENIED IN PART** as stated herein.

## I.    BACKGROUND

### a.  Procedural Background

    Plaintiff Jennifer Bardram sues Defendant Oak Hill Health and Rehabilitation, LLC ("Oak Hill"), for violation of the Fair Labor Standards Act (the "FLSA"), breach of contract, and violation of the Florida Private Whistleblower Act (the "FPWA"). (Dkt. 1) In the Complaint, Plaintiff alleges she was a non-exempt employee of Oak Hill. (Id.) Plaintiff further alleges that, while an Oak Hill employee, she regularly

worked more than 40 hours per week but was not compensated for all her overtime hours. (Id. at ¶¶ 10, 18–19) She alleges Oak Hill's failure to pay her overtime compensation violated the FLSA. (Id.) Additionally, Plaintiff alleges she and Oak Hill agreed that Oak Hill would pay her a wage of $16.32 per hour. (Id. at ¶ 27) Plaintiff claims Oak Hill breached this agreement by not compensating Plaintiff for her overtime hours. (Id. at ¶ 28) Finally, Plaintiff alleges she complained to Oak Hill that she was not getting paid fairly. (Id. at ¶ 31) She also alleges she complained to Oak Hill about its practice of "counting nursing hours worked as CNA hours" to meet statutory requirements for staffing, which Plaintiff believed was illegal. (Id. at ¶ 32) Plaintiff alleges that Oak Hill terminated her employment because she objected to these alleged illegal practices in violation of the FPWA. (Id. at ¶ 34)

Oak Hill moves for summary judgment on Plaintiff's claims. (Dkt. 20)

### b. Undisputed, Material Facts

The following facts are undisputed in the record for purposes of resolving the motion.[1] Oak Hill hired Plaintiff Jennifer Bardram as its Staffing Coordinator and Central Supply Coordinator on June 29, 2021. (Dkt. 38 at ¶ 3; Dkt. 20 at 27 (Ex. A)) As the Staffing Coordinator, Plaintiff created schedules of shift assignments for Oak Hill's nursing staff. (Dkt. 38 at ¶ 14) The schedules governed Oak Hill's staffing during given pay periods. (Id.) Plaintiff ensured employees were apprised of the schedules,

---

[1] The Court notes that much of the evidence in the record conflicts. Specifically, the bulk of the record consists of Tabby Diaz's deposition and Plaintiff's deposition, and the testimony of the two women regarding material facts often conflicts. In this section, the Court relays only those facts which are unrebutted or unrebuttable.

adjusted the schedules to cover gaps, and scheduled replacements for employees who were absent. (Id.) Plaintiff was also responsible for coordinating with staffing agencies to hire agency clinicians when Oak Hill employees could not fully staff the facility. (Id. at ¶ 13) Finally, as Staffing Coordinator, Plaintiff recruited and interviewed applicants for nursing services positions. (Id. at ¶ 14)

To create the schedule, Plaintiff used an application called OnShift. (Dkt. 22-2 at 31) Through OnShift, an Oak Hill employee could view his or her assigned schedule. (Id.) "[I]n theory, people would know six months in advance if they were going to be working on [a given] Thursday." (Id. at 32) "The schedule was usually posted a month to six weeks in advance[.]" (Id. at 33) OnShift also allowed Oak Hill employees to pick up additional, open shifts and notified Oak Hill employees about new or unexpected shift openings in the building. (Id. at 31–32) Plaintiff testified, "[T]he point of OnShift is . . . it works for itself . . . . [I]t's kind of like mindless at that point[.]" (Id. at 33) Oak Hill employees, however, could not use OnShift to remove a shift from their schedules. (Id. at 34) To remove a shift, an Oak Hill employee had to call or text the Staffing Coordinator to prompt him or her to adjust the schedule according to the employee's request. (Id.)

The Staffing Coordinator was issued a phone, which was called the staffing phone, to receive calls or texts from Oak Hill employees about their schedules. (Dkt. 38 at ¶ 15) An Oak Hill employee could call the staffing phone at any time, even outside of normal business hours. Plaintiff testified she kept the staffing phone with her 24 hours a day, seven days a week, (Dkt. 22-2 at 57), even though Plaintiff's job

3

description did not require that she be on call 24 hours a day, seven days a week. (Dkt. 38 at ¶ 18)

As Staffing Coordinator, Plaintiff managed Oak Hill's use of staffing agencies to ensure Oak Hill was fully staffed. (Dkt. 38 at ¶ 13) Oak Hill opened in 2021. (Dkt. 22-2 at 21; Dkt. 22-1 at 9) Beginning in September 2021, Oak Hill's "exponential" growth outpaced its hiring of nurses and certified nursing assistants ("CNAs"). (Dkt. 22-1 at 15–16; Dkt. 22-2 at 29–30) Oak Hill did not employ enough staff to keep the building in compliance with state and federal requirements for the ratio of patients per staff member in a nursing home. (Id.) Consequently, Oak Hill used a staffing agency, Gale Healthcare Solutions ("Gale"), to ensure it had the required number of staff working each shift to care for its patients and to meet legal requirements. (Dkt. 22-1 at 16; Dkt. 38 at ¶ 12) Agency clinicians from Gale covered shifts at Oak Hill as needed. (Id.) Plaintiff testified, "There were times where we were 70 percent agency versus staff." (Dkt. 22-2 at 42)

When Oak Hill needed more staff to cover a given shift, Plaintiff posted the shift on Gale's application for agency clinicians to accept. (Dkt. 38 at ¶ 13) If an agency clinician called out last minute, Plaintiff testified she would not receive a notification. (Dkt. 22-2 at 59–60) Instead, Plaintiff testified she had to monitor the Gale application about an hour prior to a shift to ensure that all the agency clinicians who had accepted the shift at Oak Hill still intended to show up for work. (Id.)

Plaintiff testified,

> [Y]ou would need to book agency at least two hours in

> advance. You would need to cancel agency two hours in advance as well to avoid extra charges . . . . You had to pay two hours [of compensation] . . . if you canceled somebody . . . after 5:00 A.M. for their 7:00 A.M. shift.
>
> Typically, I would overbook . . . because you just don't know these clinicians, . . . they're very touch and go, call-outs were very prevalent, so getting up at 4:00 A.M., get on . . . the Gale app, open it, look to see who's called out for that day, look to see who's picked up the call-out because . . . it does get released back to the agency . . . as an opening on their end, and have to cancel any overages based on census that we opened up at midnight by 5:00 A.M. to avoid charges to the company.

(Dkt. 22-2 at 108–09) So, Plaintiff testified that she worked for about an hour before each shift to determine whether Oak Hill was understaffed or overstaffed. (Dkt. 22-3 at ¶ 6) When Oak Hill was understaffed, Plaintiff testified she would try to fill the vacancy by calling Oak Hill employees who were not already scheduled and offering them the shift. (Id.) Plaintiff testifies this process usually took an hour. (Id.) If she could not find an Oak Hill employee to take the shift, Plaintiff testified she would use the Gale application to find an agency clinician to fill the vacancy. (Id.) Oak Hill shifts began at 7:00 a.m., 3:00 p.m., 7:00 p.m., and 11:00 p.m. (Id. at ¶ 5) Thus, Plaintiff estimated she worked three hours every day outside of her normal work hours—one hour each time: before the 7:00 a.m., 7:00 p.m., and 11:00 p.m. shifts. These time slots fell outside Plaintiff's normally scheduled workday. Although Plaintiff was not scheduled to work on weekends, she testified she worked at least three hours per day on weekends as well. (Id. at 9)

Despite Plaintiff's testimony that she routinely worked three hours per day from

home in addition to her normal shifts, Plaintiff testified, "I did not keep track of every time I worked on a schedule at home." (Dkt. 22-2 at 72) She also testified she did not report every time she worked overtime from her home. (Id. at 76) Plaintiff testified she would not report these hours because Janice Fout, a supervisor of Oak Hill's human resources and payroll, warned her that she was accumulating too much overtime and that her supervisors were watching her overtime. (Id. at 76–77) But Plaintiff testified that when she did submit her time worked from home, she was paid for it, (id. at 106), and she did not recall an occasion on which she reported that she worked overtime at home and did not get paid for it. (Id. at 80) Plaintiff's payroll records reflect that Plaintiff received overtime compensation for 17 pay periods. (Dkt. 22-4) The number of overtime hours for which Plaintiff was compensated ranged from ten hours to 64 hours per pay period. (Id.)

Plaintiff testified that when Fout warned Plaintiff that she needed to be careful with her overtime, Fout offered Plaintiff $50 per day she kept the staffing phone. (Dkt. 22-3 at ¶¶ 13–14; Dkt. 22-2 at 95) Plaintiff accepted. (Id.) At the time, Plaintiff testified, she noted that $50 "was basically three hours of pay and three hours per day was representative of how much time I typically spent working from home for Oak Hill each day." (Dkt. 38 at ¶ 13) Plaintiff testified that after she accepted this $50 per on-call day arrangement, she stopped reporting her time worked from home. (Dkt 38 at ¶ 14) However, Plaintiff testified that she never received the $50 per on-call day payment. (Id. at ¶ 15) She testified she reported that she never received the payment to Fout and to Fout's successor, Karen Dowling, but still, she never received the $50

6

per on-call day payment. (Id.)

Thirty minutes per workday were automatically deducted from Plaintiff's pay for a meal break. (Dkt. 22-2 at 67) Plaintiff testified that she did not report every time that she worked through her meal break. (Id. at 68) She further testified she took her meal breaks "on occasion," but worked through the meal break if she was busy. (Id.) She testified she would not report that she worked through a meal break if she "forgot . . . or was too busy or ate at [her] desk." (Id.)

As Central Supply Coordinator, Plaintiff was responsible for ordering needed supplies, such as catheters, oxygen tubing, and cups. (Dkt. 38 at ¶ 16) The Central Supply Coordinator also stocked and distributed supplies to the nursing stations. (Dkt. 22-1 at 22)

Oak Hill terminated Plaintiff's employment on March 16, 2022. (Dkt. 38 at ¶ 8) Two days prior, on March 14, 2022, Tabby Diaz, the Executive Director of Oak Hill, emailed Plaintiff the following:

> Hi Jen, a couple of items:
>
> 1. OT-I'm asking you again to please reduce your overtime immediately. Unless you are working a floor assignment, you really should not have more than 10 hours a PP in OT. Please correct this ASAP.
>
> 2. Supplies- I am continually hearing from our nursing staff that they don't have supplies-today was cups and saline solution. We cannot have nurses stopping treatments, med times, etc., to deal with this. Please stock the Med rooms accordingly for the types of patients that we have. Nel or Lobna would be happy to help clarify what needs to be stocked and re-stocked in the med rooms. I also had a concern that the floor didn't have Styrofoam cups

> on Friday. With the amount of expense that we are running in overage, there's no excuse for staff to not have what they need. Let's fix this ASAP as well.
>
> 3. February spend-downs were not done. This isn't optional. I see a few entries for March but I also received about 30 bills last night to process which has already shown me that we will be way over budget again. This cannot continue to happen.
>
> We MUST get this . . . I cannot continue to justify the overages especially when staff feel that they don't have needed supplies.

(Dkt. 20 at 81 (Ex. H))

In her Complaint, Plaintiff alleges Oak Hill violated the FLSA by not paying her overtime compensation for the hours she worked from home and for the times she worked through her lunch breaks. Plaintiff also alleges Oak Hill breached an agreement to pay Plaintiff a wage of $16.32 per hour. Finally, Plaintiff alleges Oak Hill terminated Plaintiff in retaliation for her objection to its alleged FLSA violation as well as an objection she made to Oak Hill being understaffed on March 12, 2022, allegedly in violation of state and federal regulations.

In the Motion, Oak Hill argues the undisputed facts do not support Plaintiff's claims. Oak Hill asserts it is entitled to summary judgment on each count of the Complaint.

## II.    LEGAL STANDARD

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing Welding

8

Servs., Inc. v. Forman, 509 F.3d 1351, 1356 (11th Cir. 2007)). Which facts are material depends on the substantive law applicable to the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

Evidence is reviewed in the light most favorable to the non-moving party. Fennell, 559 F.3d at 1216 (citing Welding Servs., Inc., 509 F.3d at 1356). A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case. Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

When a moving party has discharged its burden, the non-moving party must then designate specific facts (by its own affidavits, depositions, answers to interrogatories, or admissions on file) that demonstrate there is a genuine issue for trial. Porter v. Ray, 461 F.3d 1315, 1320-1321 (11th Cir. 2006) (citation omitted). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value."). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

## III.    DISCUSSION

Oak Hill moves for summary judgment on each of Plaintiff's claims. First, Oak Hill argues there is no evidence that Plaintiff performed overtime work for which she was not properly compensated. (Dkt. 20 at 13) Additionally, Oak Hill argues the evidence does not establish Oak Hill had either actual or constructive knowledge that Plaintiff was working overtime hours for which she was not paid. (Id. at 19) For these reasons, Oak Hill asserts it is entitled to summary judgment on Plaintiff's FLSA claim. Next, Oak Hill argues there is no evidence that Plaintiff and Oak Hill entered into an agreement or contract that obligated Oak Hill to pay Plaintiff a wage of $16.32. (Id. at 20–21) Oak Hill also maintains that even if an agreement between Plaintiff and Oak Hill existed, there is no evidence Oak Hill breached the agreement by failing to pay Plaintiff for overtime hours worked. (Id. at 22) Thus, Oak Hill requests the Court grant summary judgment in its favor on Plaintiff's breach of contract claim. Finally, Oak Hill argues the record does not show Plaintiff engaged in any activity protected by the FPWA, and no evidence suggests a causal connection between Plaintiff's alleged objection to Oak Hill's practices and her termination. (Id. at 23–24) On these bases, Oak Hill moves for summary judgment on Plaintiff's FPWA claim.

### a.  FLSA Violation

The Court must determine whether Plaintiff's FLSA claim may be resolved as a matter of law. The FLSA requires an employer pay an employee who works more than 40 hours in a workweek overtime compensation at a rate not less than one and a half times the employee's regular rate. 29 U.S.C. § 207(a)(1). An FLSA plaintiff must

demonstrate that (1) she worked overtime without compensation and (2) her employer knew or should have known about the overtime work. <u>Allen v. Bd. of Pub. Educ. for Bibb Cnty.</u>, 495 F.3d 1306, 1314–15 (11th Cir. 2007) (citations omitted). Otherwise, the plaintiff's FLSA claim fails.

### i. Plaintiff's Uncompensated Work

Oak Hill argues the record contains no evidence to show Plaintiff worked more than 40 hours during a week for which she was not properly compensated. Plaintiff responds that her deposition and affidavit testimony show the amount and extent of her uncompensated work as a matter of reasonable inference. "It is the employer's duty to keep records of the employee's wages, hours, and other conditions and practices of employment." <u>Id.</u> at 1315 (citing <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 687 (1946), *superseded on other grounds by* 28 U.S.C. § 251(a)–(b)). If an employer failed to keep appropriate records of an employee's hours, the employee carries her burden if she proves that she performed work for which she was improperly compensated and produces "'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" <u>Id.</u> at 1316 (citing <u>Anderson</u>, 328 U.S. at 687). At the summary judgment stage, if the parties' allegations or evidence conflict, "the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor." <u>Id.</u> at 1314.

Plaintiff's deposition testimony creates a genuine issue of material fact as to whether Oak Hill maintained proper and accurate records of overtime. Plaintiff testified that there was no slip or form provided by Oak Hill for her to use to report

overtime worked from home. (Dkt. 22-2 at 71) She testified that if she sought to report at-home overtime, she orally reported it to HR. (Id. at 72) Specifically, Plaintiff testified that Fout, the HR Director, instructed Plaintiff to inform Fout if Plaintiff worked outside of her regular business hours on the following workday. (Id. at 76) Plaintiff testified she never documented her overtime on a piece of paper or otherwise. (Id. at 72–73) As for the time Plaintiff spent working through her automatically deducted meal breaks, Plaintiff testified "there was no way of documenting" when she worked through a meal break. (Id. at 68–69) Plaintiff testified she would report to HR that she had worked through a meal break "on occasion" even though "[t]here was no real process" for reporting such overtime. (Id. at 68)

Plaintiff testified that when she did orally report her time worked from home, she was paid for it. (Id. at 106) But, accepting this testimony as true, the payroll records do not differentiate these orally reported hours from Plaintiff's normal clock-ins and clock-outs. In its pleadings, Oak Hill does not explain how the payroll records document these apparently manual adjustments to Plaintiff's time sheets. The record contains no evidence that Oak Hill's HR otherwise documented oral reports from Plaintiff that she worked overtime. In other words, the record reflects that Oak Hill failed to properly document Plaintiff's at-home overtime even when she reported it.

Viewing the record in the light most favorable to Plaintiff, a reasonable jury could find that Oak Hill failed to maintain proper records of when its employees worked overtime at home or worked through their automatically deducted meal breaks. Summary judgment on Plaintiff's FLSA claim, therefore, is inappropriate if a

reasonable jury could find there is sufficient evidence of the amount and extent of Plaintiff's uncompensated work "as a matter of just and reasonable inference." See Allen, 495 F.3d at 1316 (finding summary judgment inappropriate where the plaintiffs provided deposition and affidavit testimony regarding the extent and amount of their uncompensated work).

When an FLSA plaintiff presents evidence, such as affidavits or deposition testimony, to show the amount and extent of unpaid work, the plaintiff meets her "burden of estimating [her] FLSA damages for purposes of summary judgment." Centeno v. I&C Earthmovers Corp., 970 F. Supp. 2d 1280, 1288 (S.D. Fla. 2013) (quoting Pascual v. Family Boarding Home, Inc., No. 11–21221, 2012 WL 2953768, at *6 (S.D. Fla. Jul. 19, 2012)); Santelices v. Cable Wiring, 147 F. Supp. 2d 1313, 1328 (S.D. Fla. 2001) (concluding that the plaintiff's failure to show the exact number of unpaid hours he worked did not defeat his FLSA claim at the summary judgment stage). A plaintiff who produces evidence to support a just and reasonable inference of the number of unpaid hours worked is "'entitled to demonstrate at trial the amount and extent of the unpaid overtime[.]'" Centeno, 970 F. Supp. 2d at 1288 (quoting Pascual, 2012 WL 2953768, at *6).

In her deposition and affidavit, Plaintiff described her uncompensated work. Plaintiff estimated she worked three hours every day outside of her normal work hours. Specifically, Plaintiff testified that, about an hour before each shift, she began working to determine whether Oak Hill was understaffed or overstaffed. (Dkt. 22-3 at ¶ 6) When Oak Hill was understaffed, Plaintiff would try to fill the vacancy by calling Oak

13

Hill employees who were not already scheduled to offer them the open shift. (Id.) Plaintiff testifies this process usually took an hour. (Id.) If she could not find an Oak Hill employee to take the shift, Plaintiff testified she would use the Gale application to find an agency clinician to fill the vacancy. (Id.) Although Plaintiff was not scheduled to work on weekends, she testified she worked at least three hours per day on weekends as well. (Id. at ¶ 9) As for her uncompensated meal breaks, Plaintiff testified she only took her meal breaks "on occasion." (Dkt. 22-2 at 67) Plaintiff identified witnesses who could corroborate her testimony that she worked outside of business hours. (Id. at 89–91)

Moreover, Plaintiff presents evidence she was discouraged from accurately recording overtime work. Plaintiff testified she was told "to be careful with [her] overtime." (Dkt. 22-3 at ¶ 13) Then, Plaintiff testified Fout offered her $50 per day she had the staffing phone, and Plaintiff acknowledged this payment would approximately compensate her for three hours of overtime work per day. (Id.) When asked, "[S]o the $50 a day compensated you for any after-hours calls that you would have to manage as far as scheduling staffing in addition to your hourly rate for your regular shift?" Plaintiff responded, "That's what I was told I would be getting[.]" (Dkt. 22-2 at 95) Plaintiff testified that after Fout offered her the $50 per on-call day payment, she stopped recording her at-home overtime. (Dkt 38 at ¶ 14)

Plaintiff's evidence establishes genuine issues of material fact as to whether Plaintiff worked unpaid overtime hours and, if she did, the amount and extent of those hours. Thus, summary judgment on this element of Plaintiff's FLSA claim is

inappropriate.

### ii. Oak Hill's Knowledge

Oak Hill also argues it is entitled to summary judgment because there is no evidence Oak Hill had actual or constructive knowledge of Plaintiff's unpaid overtime hours. Oak Hill argues Plaintiff puts forth no evidence that she told anyone at Oak Hill that she worked overtime hours for which she was not paid. (Dkt. 20 at 19) Moreover, Oak Hill notes that Plaintiff testified she never told a supervisor that she regularly worked from home without reporting her time. (Id. at 10) Although Plaintiff's response does not discuss Oak Hill's argument that it lacked knowledge of Plaintiff's unpaid overtime hours, (see Dkt. 22), the evidence in the record establishes an issue of fact exists as to Oak Hill's constructive knowledge of Plaintiff's overtime work.

"An employer is said to have constructive knowledge of its employee's overtime work when it has reason to believe that its employee is working beyond his shift." Allen, 495 F.3d at 1319 (citing 29 C.F.R. § 785.11). "[I]f an employer had an opportunity to acquire knowledge of an employee's work by using reasonable diligence, then the employer can be charged with constructive knowledge." Id. at 1321. In Allen, the Board pointed to deposition excerpts in which some plaintiffs admitted that "they had not informed their supervisors of their overtime work, or had not told them that they had not recorded or been paid for hours that the supervisor may have known they worked beyond their scheduled hours." Id. at 1319–20. In response, the plaintiffs pointed to testimony "that tended to create a dispute of fact as to whether the Board knew or should have known that [they] were working without pay." Id. at 1320.

For example, the <u>Allen</u> court concluded an issue of fact existed as to the Board's knowledge where the plaintiff, a school bus driver, testified that a "route supervisor" knew she was working "off the clock." <u>Id.</u> at 1320. Likewise, the court found an issue of fact existed where another plaintiff, also a school bus driver, testified that she washed and cleaned her bus without pay, and she alerted two transportation department directors to that fact. <u>Id.</u> at 1321. The Board argued this testimony did not establish the directors or supervisors knew the plaintiffs would not be compensated for their overtime work. <u>Id.</u> The <u>Allen</u> court, however, found that a jury could find the supervisors, and therefore the Board, had constructive knowledge of the unpaid overtime work. <u>Id.</u>

Here, Plaintiff testified she told Fout, the HR Director, about "the calls that [she was] getting at home . . . that [she] considered to be overtime and that [she] should be compensated for that overtime[.]" (Dkt. 22-2 at 75–76) Plaintiff also testified that she listed Mikaela Saunderson, Oak Hill's Life Enrichment (Activities) Director and Plaintiff's friend, in Plaintiff's interrogatories because Saunderson could corroborate that Plaintiff worked overtime hours while not present on Oak Hill's campus. (<u>Id.</u> at 88–89, 91) Plaintiff testified that Lobna Amara, the Director of Nursing and Plaintiff's direct supervisor, and Nomari Roebig, the Assistant Director of Nursing, knew she worked outside of her scheduled shift because they would communicate with her about staffing outside of normal business hours. (<u>Id.</u> at 91–92) Plaintiff's testimony shows that at least four people with director or assistant director status at Oak Hill had constructive knowledge that Plaintiff was working outside of her scheduled hours. By

16

using "reasonable diligence," Oak Hill could have learned that Plaintiff regularly worked outside of her scheduled shift. <u>Allen</u>, 495 F.3d at 1321. Under <u>Allen</u>'s precedent, Plaintiff has established an issue of fact exists as to Oak Hill's knowledge of her unpaid overtime hours.

Oak Hill has not established it is entitled to summary judgment on either element of Plaintiff's FLSA claim. Accordingly, the Motion is **DENIED** as to Count I.

### b. Breach of Contract

Oak Hill argues it is entitled to summary judgment on Plaintiff's breach of contract claim because the record contains no evidence that Plaintiff and Oak Hill entered into an agreement under which Oak Hill would pay Plaintiff $16.32 per hour of work. In her response, Plaintiff claims a breach of contract based on the following: "Plaintiff testified that to avoid paying her overtime for the time she spent working from home, Defendant offered to pay her $50 per day for being on-call. Defendant did not pay her as agreed, which is a breach of contract." (Dkt. 22 at 16–17) The Complaint alleges generally that Oak Hill committed breach of contract due to its failure to pay Plaintiff at an unspecified overtime rate of pay. Now and in discovery, Plaintiff claims that Oak Hill committed breach of contract by failing to pay her $50 per on-call day according to Fout's alleged promise. Oak Hill replies that Plaintiff has failed to prove that Fout had authority to commit Oak Hill to the $50 flat rate of pay per day.

To establish breach of contract under Florida law, a plaintiff must prove "(1)

17

the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1272 (11th Cir. 2009). No issue of fact exists as to whether a contract regarding Plaintiff's regular rate of pay existed between Plaintiff and Oak Hill. The Parties stipulate that on January 8, 2022, Plaintiff's pay rate increased from $16.00 per hour to $16.32 per hour. (Dkt. 38 at ¶ 5) Although the record contains no documentary evidence of an employment contract or other agreement under which Oak Hill agreed to pay Plaintiff $16.32 per hour of work, the Parties' stipulation evidences an agreement existed between the Parties as to Plaintiff's rate of compensation. Nonetheless, the existence of an agreement as to Plaintiff's regular rate of pay does not necessarily establish an agreement to pay Plaintiff overtime compensation at a specific rate.

Plaintiff asserts that Fout agreed to pay Plaintiff overtime compensation in the form of a $50 per day flat rate above her hourly rate. Oak Hill disputes that Fout made this offer and disputes whether Fout's offer, if it occurred, could bind Oak Hill. The number of days to which such a rate would apply is also disputed. Thus, material issues of fact exist as to Plaintiff's claim that she is owed $50 per day over her hourly rate for certain days she worked.

Accordingly, Oak Hill is not entitled to summary judgment on Count II of the Complaint. With respect to Plaintiff's breach of contract claim, the Motion is **DENIED**.

### c. FPWA Violation

Oak Hill argues the record does not show Plaintiff engaged in any activity

protected by the FPWA, and no evidence suggests a causal connection between Plaintiff's alleged objection to Oak Hill's practices and her termination. (Dkt. 20 at 23–24) In response, Plaintiff argues the record evidence establishes the elements of Plaintiff's FPWA claim. (Dkt. 22 at 9-15) Specifically, Plaintiff points to her testimony that she reported to Oak Hill its alleged failure to comply with staffing regulations a few days prior to her termination. (Id. at 11) She also notes that, according to her testimony, she reported Oak Hill's failure to comply with the FLSA approximately six months before her termination. (Id.) Plaintiff argues the temporal proximity between her report that Oak Hill allegedly violated staffing regulations and her termination sufficiently supports a causal connection under the FPWA. (Id. at 12) Plaintiff argues the record evidence, namely, Tabby Diaz's email, sufficiently supports a causal connection between her report of Oak Hill's alleged FLSA violations and her termination. (Id.)

Section 448.102(3), Fla. Stat. (2023), prohibits an employer from retaliating against an employee for objecting to or refusing to participate in any activity, policy, or practice of the employer which violates a law, rule, or regulation.[2] Courts in the Eleventh Circuit analyze FPWA retaliation claims under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). McAlpin v. Sneads, 61 F.4th 916, 927 (11th Cir. 2023). "Under this framework, the

---

[2] Oak Hill notes, and Plaintiff does not credibly dispute, that Plaintiff never made any complaints about Oak Hill's alleged violations in writing. Consequently, § 448.102(1), Fla. Stat., which provides protection for an employee who has disclosed an employer's violation in writing, is inapplicable. Likewise, the record does not establish Plaintiff provided information to or testified before a government agency; thus, § 448.102(2) is inapplicable.

plaintiff bears the initial burden of proving his prima facie case." Id. (citing Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 950 (11th Cir. 2000)). "If the plaintiff successfully establishes a prima facie case, 'the burden shifts to the defendant to proffer a legitimate reason for the adverse action.'" Id. (citing Sierminski, 216 F.3d at 950). If the defendant does so, "'[t]he burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the "legitimate" reason is merely pretext for prohibited, retaliatory conduct.'" Id. (citing Sierminski, 216 F.3d at 950).

To establish a prima facie case of retaliation under the FPWA, a plaintiff must show "'(1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relation between the two events.'" Id. (quoting Rice-Lamar v. City of Fort Lauderdale, 853 So. 2d 1125, 1132–33 (Fla. 4th DCA 2003)).

### i. Report of Alleged Violation of Staffing Regulations

Oak Hill argues Plaintiff did not object or refuse to participate in an activity she believed was illegal. (Dkt. 20 at 23) Instead, Oak Hill asserts "Plaintiff's testimony merely suggests that she mentioned the staffing might be 'under an hour' after discovering that an employee had not shown up for work." (Id.) Oak Hill notes there is no evidence that Plaintiff objected to Oak Hill "'counting hours worked as CNA hours worked'" to meet staffing requirements. (Id. (quoting Dkt. 1 at ¶ 32)) In response, Plaintiff points to her testimony that she reported Oak Hill "would have been under an hour by federal guidelines" to Diaz and Amara. (Dkt. 22 at 10–11; Dkt. 22-2 at 110)

As stated above, the first element of Plaintiff's prima facie case under the FPWA is a showing that she engaged in statutorily protected expression. The Court notes at the outset that Plaintiff presents no evidence that she ever objected to or refused to participate in Diaz's plan to cover the shortage in CNA hours with nursing hours. Since there is no evidence Plaintiff spoke out against this alleged violation before her termination, there is no evidence of statutorily protected expression related to it.

As for Plaintiff's report that Oak Hill was understaffed on March 12, 2022, Plaintiff fails to establish this report was statutorily protected expression. Florida's district courts of appeal disagree about whether the first element of a prima facie FPWA claim requires an employee show the employer actually violated the law, and the Florida Supreme Court has not resolved the disagreement. Butterfield v. JetBlue Airways Corp., No. 20-13473, 2022 WL 291003, at *5 (11th Cir. Feb. 1, 2022) (comparing Aery v. Wallace Lincoln-Mercury, LLC, 118 So. 3d 904, 916 (Fla. 4th DCA 2013), and Kearns v. Farmer Acquisition Co., 157 So. 3d 458, 465 (Fla. 2d DCA 2015)). In Aery, the Fourth District Court of Appeal held that an employee satisfies the first element by showing she had "a good faith, objectively reasonable belief" that her activity was protected by the statute. 118 So. 3d at 916. In Kearns, however, the Second District Court of Appeal held that employee must prove an actual violation of a law, rule, or regulation. 157 So. 3d at 465.

Even under Aery's good-faith belief standard, Plaintiff fails to carry her burden because she does not identify in the Complaint—or elsewhere in the record—a law, rule, or regulation she believed was violated. A plaintiff's FPWA claim "falls short"

21

where the plaintiff identifies "no law or rule that she could reasonably have believed" was violated. Scott v. Adv. Pharms. Consultants, Inc., 570 F. Supp. 3d 1120, 1126 (N.D. Fla. 2021); see also Parks v. Speedy Title & Appraisal Review Servs., 318 F. Supp. 3d 1053, 1071 (N.D. Ill. 2018). In Aery, the plaintiff "observed the . . . manager commit acts which, if true, appear to be illegal, and which [he] could have reasonably believed were illegal." 118 So. 3d at 916. The Fourth District Court of Appeal held the plaintiff satisfied the first element of his prima facie FPWA claim by showing he reported his observations to his superiors and described the acts as illegal. Id. The court stated, "It was not necessary that Aery **provide his employer** with statutory and case law citations to support his claim of illegal conduct." Id. (emphasis added). Notably, however, Aery alleged in his complaint that the alleged practices of his manager violated or implicated §§ 817.413, 817.29, 812.017, and 812.014, Fla. Stat. Id. at 908; see also Aery v. Wallace Lincoln-Mercury, LLC, No. 06-0042730 AD, Dkt. 97 at ¶ 21 (Fla. 15th Cir. Ct. Jul. 18, 2007).

In an affidavit, Plaintiff testified that Oak Hill was understaffed on Saturday, March 12, 2022, because the Director of Nursing gave an employee the day off without informing Plaintiff. (Dkt. 22-3 at ¶¶ 18, 20) As a result, Plaintiff did not schedule another employee to cover the open shift, and Oak Hill's staffing allegedly fell below regulatory requirements. (Id.) Plaintiff testified that on the Monday following the day Oak Hill was short-staffed, she told Diaz and Amara that she believed Oak Hill was legally required to report a staffing deficiency. (Id. at ¶ 21) Plaintiff testified that Diaz replied by saying "not to worry, she would cover the shortage by using nursing hours

to cover the deficient CNA hours." (Id.) Plaintiff believes this practice to be illegal. (Id.) Nowhere in the record does either Party cite to a state or federal law or regulation related to the number of staff Oak Hill was required to have on site.

Plaintiff has not pointed to a law, rule, or regulation that Oak Hill allegedly violated by being short-staffed. Although Plaintiff could satisfy the first element of her prima facie case without showing that she cited a law or rule to Oak Hill at the time of her report, she cannot survive summary judgment without identifying for the Court what law or rule she believed was violated. Aery, 118 So. 3d at 916; Scott, 570 F. Supp. 3d at 1126. Cf. Usher v. Nipro Diabetes Sys., Inc., 184 So. 3d 1260, 1262 (Fla. 4th DCA 2016) (finding the complaint sufficiently stated a FPWA claim where it "pleaded violations of sections of the Federal Food, Drug, and Cosmetic Act" and "cited relevant portions of the United States Code and the Code of Federal Regulations"). The Court cannot determine whether Plaintiff had a good-faith, objectively reasonable belief that Oak Hill violated a law without knowing which law, rule, or regulation she alleges was violated. Accordingly, Plaintiff fails to carry her burden on the first element of her FPWA claim.

The Court need not address whether Plaintiff's objection to Oak Hill's alleged short-staffing is causally connected to her termination because where one necessary element fails, the claim fails. For this reason, Oak Hill is entitled to summary judgment on Plaintiff's FPWA claim as it relates to her report that Oak Hill was understaffed.

### ii. Report of Alleged Violation of the FLSA

Oak Hill argues there is no evidence Plaintiff objected to its alleged violations

of the FLSA, and there is no evidence to support a causal connection between her alleged objection and her later termination. (Dkt. 20 at 23) Plaintiff points to her testimony that she discussed her unpaid overtime work with Fout as evidence she objected to Oak Hill's alleged FLSA violation. (Dkt. 22 at 11–12) Then, Plaintiff argues that Diaz's email shows that her termination was related to her overtime hours. (Id.)

Plaintiff fails to show she engaged in protected activity by objecting to or refusing to participate in Oak Hill's alleged FLSA violation. The Court acknowledges that at one point, Plaintiff objected to Oak Hill's alleged FLSA violation. Plaintiff told Fout about "the calls that [she was] getting at home . . . that [she] considered to be overtime and that [she] should be compensated for that overtime[.]" (Dkt. 22-2 at 75–76) However, Fout offered Plaintiff $50 per day she had the staffing phone and warned Plaintiff "not to push it." (Dkt. 22-3 at ¶ 13) Plaintiff testified she accepted Fout's offer, but never received the $50 per on-call day payment even after complaining to Fout and Dowling. (Id. at ¶¶ 14, 15) Plaintiff did not testify that she objected to Oak Hill's alleged FLSA violation at any point thereafter.

Based on these facts, it appears Plaintiff did not refuse to participate in Oak Hill's alleged FLSA violation. § 448.102(3), Fla. Stat. (2023). After Plaintiff objected to Oak Hill's alleged failure to compensate Plaintiff for her overtime hours, Fout offered Plaintiff a compromise that itself would violate the FLSA, and Plaintiff accepted it. At no point thereafter did Plaintiff object or refuse to participate in Oak Hill's alleged, continued FLSA violation.

24

Even assuming Plaintiff engaged in protected activity, however, Plaintiff fails to establish a causal connection between her objection to Fout and her termination. "To establish the causal connection element, 'a plaintiff need only show "that the protected activity and the adverse action were not wholly unrelated."'" Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000) (citations omitted). To show the two events were not entirely unrelated, the plaintiff must show the decisionmaker who took the adverse action knew about the plaintiff's protected activity. Martin v. Financial Asset Management Sys., Inc., 959 F.3d 1048, 1057 (11th Cir. 2020) ("[T]he plaintiff must establish 'that the employer was actually aware of the protected expression at the time it took adverse employment action.'"); Stone v. Geico Gen. Ins. Co., 279 F. App'x 821, 824 (11th Cir. 2008) (noting the Eleventh Circuit "rule that the protected activity must be known to the decision-maker who takes the adverse action").[3] "A decision maker cannot have been motivated to retaliate by something unknown to him." Brungart, 231 F.3d at 799. Thus, unrebutted evidence that the decisionmaker did not know about the plaintiff's protected activity before taking the adverse action forecloses the plaintiff's retaliation claim on summary judgment. See Martin, 959 F.3d at 1054 (affirming the grant of summary judgment on the plaintiff's retaliation claim where the defendant presented evidence the decisionmaker lacked knowledge of the plaintiff's discrimination complaint, and the plaintiff failed to

---

[3] The Court notes that "[a]lthough an unpublished opinion is not binding on this court, it may be considered as persuasive authority. See 11th Cir. R. 36-2." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000). Where cited herein, any unreported decision of a panel of the Circuit is considered well-reasoned and is offered as persuasive, not binding.

impeach the decisionmaker's testimony or to present circumstantial evidence of his knowledge).

In Plaintiff's case, Diaz made the decision to terminate Plaintiff. (Dkt. 22-1 at 42; Dkt. 20 at 33 (Ex. E)) Diaz testified that Plaintiff never complained about her overtime work while she worked for Oak Hill and that she never complained about uncompensated overtime hours. (Dkt. 22-1 at 37) Oak Hill, therefore, presents evidence that the decisionmaker responsible for the adverse action taken against Plaintiff did not know that Plaintiff complained about an FLSA violation to Fout.

Plaintiff fails to rebut Diaz's testimony, either by impeachment or circumstantial evidence. Plaintiff testified that she only ever spoke to Fout about the overtime hours for which she was not compensated. (Dkt. 22-2 at 75-79) Plaintiff further testified that she never told Diaz about Fout's promise to pay her $50 per on-call day. (Dkt. 22-2 at 97) Evidence that Plaintiff complained about an FLSA violation to another senior employee is not evidence of Diaz's knowledge under Eleventh Circuit precedent. See Martin, 959 F.3d at 1054.

Plaintiff thus fails to establish a causal connection between her complaint to Fout about Oak Hill's alleged FLSA violation and Diaz's decision to terminate her employment. Accordingly, Oak Hill is entitled to summary judgment on Plaintiff's FPWA claim. The Motion is **GRANTED** as to Count III.

## IV.   CONCLUSION

Accordingly, the Court **ORDERS** as follows:

1. Defendant's Motion for Summary Judgment, (Dkt. 20), is **GRANTED**

26

**IN PART and DENIED IN PART**. The Motion is **GRANTED** as to Plaintiff's FPWA claims. The Motion is **DENIED** as to Plaintiff's FLSA and breach of contract claims.

2. The Clerk is **DIRECTED** to **LIFT THE STAY** and to **REOPEN** this case.

3. The Parties are **DIRECTED** to file an amended case management report within twenty-one (21) days of the date of this Order.

**DONE** and **ORDERED**, in Tampa, Florida this 16th day of April 2025.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Party

27